UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
                                          :
MEENU GAIND,                              :
                                          :
                    Plaintiff,            :   04 Civ. 9407 (TPG)
                                          :
        - against -                       :   **AMENDED OPINION**
                                          :
                                          :   USDC SDNY
ANGEL GARCIA CORDERO and ANTA             :   DOCUMENT
INVERSIONES Y ASESORAMIENTO S.A.,         :   ELECTRONICALLY FILED
                                          :   DOC #: _____
                    Defendants.           :   DATE FILED: 4/30/08
                                          :
------------------------------------------x

Plaintiff Meenu Gaind brings this pro se action against defendants Angel Garcia-Cordero ("Cordero") and Anta Inversiones y Asesoramiento S.A. (formerly named and sued as Anta Internacional Asesoramiento Financiero, S.A.) ("Anta"), asserting (1) fraud, and (2) fraudulent conveyances in violation of New York Debtor and Creditor Law §§ 273-276.

On September 24, 1999 plaintiff, then represented by counsel, commenced a similar action, 99 Civ. 10002, against defendants Cordero and Anta, and other parties, including Edward G. Pierot ("E. Pierot"), Robert J. Pierot, Jr., Felicia Pierot Choi Brody, Catherine Pierot Chen Zuckerman[1] (collectively referred to as the "Pierot Children"). On January 31, 2000, the Pierot Children and two related defendants, Pierot

---

[1] Incorrectly referred to in the amended complaint as Zicherman.

Enterprises, Inc., and Palm Beach Trading Enterprises, Inc., moved to dismiss the 1999 complaint. Defendants Cordero and Anta did not join in this motion. As a result of plaintiff's failure to respond to this motion, on November 20, 2000, this Court dismissed the action as to the moving defendants, and on January 17, 2001, a judgment was entered against plaintiff. Plaintiff did not move to reopen the case or appeal the judgment.

The original complaint in this action was filed on November 30, 2004, with plaintiff appearing pro se. In a March 31, 2006 opinion, this Court dismissed plaintiff's complaint in its entirety as to the Pierot Children and two related defendants, Pierot Enterprises, Inc., and Palm Beach Trading Enterprises, Inc. The Court held these claims were barred by res judicata. In this same decision, this Court rejected the defense of res judicata as to defendants Cordero and Anta, but dismissed several claims against them on the merits: mail and wire fraud, breach of fiduciary duty, waste and diversion, conversion, quantum meruit, unjust enrichment, and equitable estoppel. This Court determined that plaintiff would need to replead with greater specificity her fraud and fraudulent conveyance claims against Cordero and Anta. On July 10, 2008, the Second Circuit affirmed this Court's judgment in favor of the Pierot Children and two related defendants, Pierot Enterprises, Inc., and Palm Beach Trading Enterprises, Inc., but stated that it lacked jurisdiction to review the portion of the decision that dismissed several of plaintiff's

claims against Cordero and Anta, because a final judgment as to Cordero and Anta had not been entered. Gaind v. Pierot, No. 06 Civ. 4789, 2008 WL 2704396, at *1 n.1 (2d Cir. 2008).

After initially serving defendants with a letter and affidavit, plaintiff formally served her first amended complaint on November 22, 2006. Defendants now move to dismiss plaintiff's amended complaint. Defendants allege that (1) the claims are barred by res judicata, (2) the fraud claims are not pled with the specificity required under Fed. R. Civ. P. 9(b), and (3) the complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6). As discussed below, defendants' motion is denied.

## The Complaint

The following is a summary of the allegations in the complaint. Plaintiff is an investment advisor, money manager and investment banker. E. Pierot, Robert J. Pierot, Jr., Felicia Pierot Choi Brody, Catherine Pierot Chen Zuckerman are the children of Pierot Sr. Pierot Enterprises, Inc. is a private investment company founded and funded by Pierot Sr. Palm Beach Trading Enterprises, Inc. is a financial holding and securities trading company formed by E. Pierot. Defendant Cordero was a business associate of the Pierots. Anta is a company owned by Cordero and Pierot Enterprises, Inc.

Plaintiff's relationship with Pierot Sr. began in early 1987 when plaintiff began advising a venture capital investment for Pierot Sr. and the Pierot Children through Pierot Enterprises. In August 1993, plaintiff

began working directly with Pierot Sr. in the global securities trading and IPO flipping business, which is defined as "the acquisition of newly issued stock in an initial public offering and the intra-day resale of such stock." Pierot Sr. and plaintiff formalized this business arrangement (the "Venture") in a written agreement signed in January 1994 ("the 1994 Agreement"). This agreement reads, in part:

> As I [Pierot Sr.] am funding this business either through my own funds or funds belonging to friends and family and will be doing the administration and you will be using your "market expertise and business contacts," the gross profits of this global securities trading and IPO flipping operation . . . will be split 50/50 between both of us each carrying our own expenses. You will not be personally liable for any losses incurred either by you or any of the traders.

The agreement further provides that if Pierot Sr. dies, becomes ill or decides to retire, plaintiff has "the first right of refusal to carry on the business relationships" related to the business.

The complaint states that the Venture was very successful. Plaintiff asserts that through her extensive global industry contacts, the Venture participated in several hundred IPO flipping deals, involving hundreds of trades per week. Plaintiff asserts that Cordero bought and sold securities on behalf of the Venture through Anta and other entities. Plaintiff states that the Venture generated trading profits of up to and over $10 million per year. To maintain sufficient capital in the Venture

to support the large volume of trading, plaintiff and Pierot Sr. both kept their profits in the Venture.

In late 1996, as Pierot Sr.'s health worsened, Pierot Sr. began to transfer millions of dollars of assets outside the United States, which plaintiff asserts included most of the Venture's assets. Later, in early 1997, Pierot Sr. and the Pierot Children allegedly transferred the Venture's remaining assets and business to Palm Beach Trading and to overseas entities owned and controlled by Cordero and the Pierot Children. Plaintiff alleges that Cordero facilitated many of these transfers.

When plaintiff expressed her concerns to Pierot Sr. that she would not recover her share of the Venture's profits, he sent a letter on February 5, 1997 confirming her right to over $20 million of the accumulated profits of the Venture, in accordance with the 1994 Agreement, and her first right of refusal to carry on the business in the event of his death. Pierot Sr. assured plaintiff that "although I have taken a lot of my money and assets abroad," the Pierot Children have agreed to honor the 1994 Agreement. The letter further stated "forgive me for sometimes keeping some of the details from you as you would not have authorized some of the practices and may have withdrawn from this business entirely." The letter also stated that if upon his death, his son Robert J. Pierot, Jr., and his children, "decide not to honor my business agreements with you, approach Angel Garcia Cordero directly. He can

use this letter as his authorization to pay you up to US$ 20 million immediately from the funds I have structured overseas." In the letter, Pierot Sr. acknowledged that payment to plaintiff had been delayed, and assured plaintiff that a full audit of the Venture would soon be completed, followed by payment.

Following Pierot Sr.'s death in November 1997, E. Pierot also assured plaintiff that the audit of the Venture would soon be completed and her money distributed. Plaintiff asserts that she told the Pierot Children that she wanted to collect her share of the Venture's profits, and that she wished to assume control over management of the Venture, as was her right under the 1994 Agreement. Throughout 1998, plaintiff asserts that the Pierot Children repeatedly assured plaintiff that the Venture's accounts were being audited, and that she would be paid upon completion. Finally, in December 1998, the Pierot Children refused to pay plaintiff her portion of the Venture's profits. Instead, they continued to manage the Venture, and excluded plaintiff from participating in any IPO flipping. Plaintiff states that the Pierot Children later informed her that "the person hired to do the internal audit of the Venture had no accounting background" and "that no internal audit had in fact been done."

Plaintiff asserts that throughout 1998, she sought to determine whether and where the Pierot Sr. estate had been probated, as she believed his estate was valued at over $50 million. Plaintiff states that

she discovered that much of the Venture's money previously held in the accounts at Societe Generale, Banco Santander, Banesto, Spear Leeds, Bear Sterns, Security Pacific and IBJ Schroder had been transferred to overseas accounts, including, she believes, to banks in Spain, Andorra, the Netherlands, France, and Switzerland. Plaintiff asserts that defendant Cordero effectuated many of these transfers of the Venture's assets.

As many of the above mentioned transfers required notarized documents with signatures, plaintiff asserts that beginning in 1996, Cordero, Anta and the Pierot Children caused these documents to be forged. Plaintiff further asserts that to facilitate the transfers and enable the Pierot Children to then regain custody of the Venture's transferred assets, Cordero and Anta helped E. Pierot establish a post office box residence in Andorra. In addition, plaintiff asserts that Cordero and Anta helped the Pierot Children "take personal possession into their own homes of valuable items from the Pierot Sr. estate without probate." Plaintiff further asserts that Cordero traveled to Arizona, Colorado, Connecticut, and Florida to facilitate the transfers of the Venture's assets described above. Plaintiff alleges that during a trip to Connecticut in the mid to late 1990s, Cordero stayed at homes owned by Pierot Jr. and Felicia Pierot Choi Brody. And while in Florida, Cordero stayed at a home owned by E. Pierot. Plaintiff alleges that the Pierot Children traveled to, among other locations, Andorra and Madrid in each of the

years of 1997, 1998 and 1999, to meet with Cordero and further the transfers of the Venture's assets. Plaintiff asserts that the Pierot Children and Cordero ultimately acknowledged the transfers of the Venture's assets, yet continue to refuse to pay plaintiff her share of the profits.

## Discussion

Res Judicata

Defendants argue that plaintiff's claims are barred by res judicata based on this Court's November 20, 2000 Order dismissing plaintiff's similar 1999 action against the Pierot Children, Pierot Enterprises, Inc., and Palm Beach Trading Enterprises, Inc. Defendants argue that in her complaint, plaintiff asserts the same fraud and fraudulent conveyance claims against defendants Cordero and Anta as in her 1999 complaint, and that the claims arise out of the same facts, series of events, transactions, and occurrences.

In its March 2006 Order, this Court stated:

> Unlike the Pierot Defendants, Cordero and Anta did not move to dismiss the complaint in the 1999 action. Indeed, it is not clear whether Cordero and Anta were ever served in that action. The November 20, 2000 order dismissing the complaint, and the January 17, 2001 judgment, pertained only to the Pierot Defendants. Cordero and Anta may therefore not avail themselves of the res judicata defense.

Cordero and Anta urge that this ruling about res judicata was in error and should be reconsidered. This Court is willing to reconsider the

issue, but adheres to the same ruling. The doctrine of res judicata holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994) (citation omitted). To invoke the doctrine, a party must demonstrate that (1) the prior action involved an adjudication on the merits, (2) the prior action dealt with the same parties or those in privity with them, and (3) the claims asserted in the later action were, or could have been, alleged in the prior action. Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted).

The issue here is whether the second element is met – that the previous action involved the same parties or those in privity. Defendants argue that their interests are sufficiently aligned with the Pierot Children, Pierot Enterprises, Inc., and Palm Beach Trading Enterprises, Inc. to justify preclusion. Defendants argue that plaintiff repeatedly asserts that defendants fraudulently acted in concert with the Pierot Children. Similarly, plaintiff asserts that defendant Anta was partly owned by Pierot Enterprises, Inc.

While courts have acknowledged that privity is "an amorphous concept not easy of application," Buechel v. Bain, 97 N.Y.2d 295, 304, 740 N.Y.S.2d 252, 766 N.E.2d 914 (2001), it essentially allows a person, under certain circumstances, to be bound by a prior judgment to which he was not a party of record. The Second Circuit has stated that privity

bars relitigation of the same cause of action against a new defendant that has a sufficiently close relationship to the original defendant to justify preclusion. Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367-68 (2d Cir. 1995). To determine this, a court often must assess whether a party controlled or substantially participated in the control of litigation on behalf of a party to the previous action. Id. at 368. This Court holds that the Pierot Children and their two related companies cannot be considered to be in privity with Cordero and Anta for the purpose of applying the res judicata rule. Although the complaint alleges that they were in league to accomplish fraudulent purposes, different roles were played and different grounds of liability may exist, depending upon the precise facts. Moreover, there is no indication that Cordero or Anta played any role in the 1999 case.

Fraudulent Conveyances

To support her claim of fraudulent conveyances, plaintiff has offered two main theories of fraudulent intent under New York law.

DCL § 273

First, pursuant to the New York Uniform Fraudulent Conveyance Act, New York Debtor and Creditor Law ("DCL") §§ 273-275 (2008), plaintiff alleges constructive fraud, whereby a conveyance "by a debtor is deemed constructively fraudulent if it is made without 'fair consideration,' and ... if one of the following conditions is met: (i) the transferor is insolvent or will be rendered insolvent by the transfer in

question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275." In re Sharp Int'l Corp., 403 F.3d 43, 53 (2d Cir. 2005).

Here, plaintiff alleges specifically that "defendants knew that the transfers of assets were made without consideration at a time when the Venture was, or thereby was rendered, insolvent." This allegation seems to focus exclusively on DCL § 273. Thus, this Court will address whether plaintiff's complaint sufficiently states a cause of action under this subparagraph.

DCL § 273 states that: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." Thus, to allege a fraudulent conveyance under this provision, the plaintiff must establish that (1) the conveyance was made; (2) the transferor was or would become insolvent at the time of the conveyance; and (3) the conveyance was made without fair consideration.

Here, plaintiff alleges that in 1997, Pierot Sr. and the Pierot Children transferred the Venture's remaining assets and business to Palm Beach Trading, and other overseas entities, which plaintiff asserts Cordero and the Pierot Children owned and controlled. Plaintiff alleges

that virtually all of the Venture's assets were transferred from or through accounts at Societe Generale, Banco Santander, Banesto, Spear Leeds, Bear Stearns, Security Pacific and IBJ Schroder to overseas banks located in countries including Spain, Andorra, the Netherlands, France and Switzerland. Based on these allegations, plaintiff has sufficiently alleged that conveyances were made from accounts controlled by the Venture to overseas accounts.

Plaintiff also adequately alleges defendants' participation in the above mentioned conveyances of the Venture's assets. Plaintiff alleges that Cordero and Anta effected many of these transfers by (1) causing documents to be forged that were required to facilitate the transfers, and (2) helping E. Pierot establish a post office box residence in Andorra that allowed the Venture's assets to be transferred overseas and then enabled the Pierot Children to regain custody of the assets. Defendants' assistance in these transfers finds further support in Pierot Sr.'s 1997 letter to plaintiff, which reads:

> In case Bobby and/or the children decide not to honor my business agreements with you, approach Angel Garcia Cordero directly. He can use this letter as his authorization to pay you up US$ 20 million immediately from the funds I have structured overseas.

Finally, these allegations of plaintiff's complaint are to the effect that the overseas transfers of large portions of the Venture's assets were executed for no consideration. Under New York law, while "a party challenging a conveyance under DCL § 273 has the burden of proving both insolvency

and the lack of fair consideration ... the burden shifts, in cases where there appears to be no consideration, to the transferor (or transferee) to prove the legitimacy of the transaction." Cadle Co. v. Newhouse, No. 01 Civ. 1777, 2002 WL 1888716, at *5 n.5 (S.D.N.Y. Aug. 16, 2002), aff'd, 74 Fed. Appx. 152 (2d Cir. 2003). Because plaintiff alleges that defendants Cordero and Anta participated in overseas transfers of the Venture's assets for no consideration, this constitutes a sufficient allegation that the Venture was rendered insolvent.

DCL § 276

In addition, or in the alternative, plaintiff's second theory of fraudulent conveyance is that defendants transferred or helped transfer millions outside the accounts controlled by the Venture, with an actual intent to defraud plaintiff in violation of DCL § 276 by barring plaintiff's access to those assets. Under DCL § 276: "Every conveyance made ... with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

To sustain a claim under DCL § 276, "a creditor must show intent to defraud on the part of the transferor." In re Sharp Int'l Corp., 403 F.3d at 56 (quotation and citation omitted). Unlike a claim under DCL § 273, because a claim under DCL § 276 requires actual intent to hinder, delay, or defraud, which constitutes fraud, "it must be pled with specificity, as required by Fed. R. Civ. P. 9(b)." Id.

As plaintiff seeks to set aside the purported fraudulent conveyances, the burden of establishing actual intent rests with her. U.S. v. McCombs, 30 F.3d 310, 328 (2d Cir. 1994) (citations omitted). The Second Circuit has stated, however, that "[d]ue to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." In re Sharp Int'l Corp., 403 F.3d at 56 (citation omitted). Such "badges of fraud" include: "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; ... and retention of control of the property by the transferor after the conveyance." Id. (citations omitted).

The complaint adequately alleges several badges of fraud: the close working relationship between Cordero, Anta and the Pierot Children; that the overseas transfers were executed for no consideration; and that Cordero and Anta participated in the forgery of transfer documents. Fed. R. Civ. P. 9(b) requires a complaint alleging fraud to be pled with particularity. Given the alleged clandestine nature of the challenged transfers, plaintiff has adequately alleged a prima facie case under DCL § 276 that satisfies the requirements of Fed. R. Civ. P. 9(b).

Common Law Fraud

This Court has now held that the complaint sufficiently alleges participation by defendants Cordero and Anta in fraudulent transfers. These allegations go a long way towards constituting a valid claim for common law fraud. Plaintiff alleges that, while these fraudulent transfers here were being carried out, she was assured by the group, which included both the Pierot Children and Cordero and Anta, that the assets of the Venture were being properly cared for and audited, and that she would be paid her proper share of the profits. The allegations are sufficient to make out a claim that this was a fraud against her, for which Cordero and Anta are partly responsible.

## Conclusion

Defendants' motion to dismiss for failure to state a claim is denied as to plaintiff's fraud and fraudulent conveyance claims pursuant to DCL § 273 and DCL § 276.


Dated: New York, New York
      September 29, 2008

SO ORDERED

Thomas P. Griesa
U.S.D.J.