UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                                        :

MEENU GAIND,                           :
                                          :

                        Plaintiff,       :      04 Civ. 9407 (TPG)
                                          :

             – against –          :      **<u>OPINION</u>**
                                          :

ANGEL GARCIA CORDERO and ANTA  :
INVERSIONES Y ASESORAMIENTO,    :
S.A.,                                      :
                                          :

                        Defendants.
------------------------------------------------x

       Meenu Gaind brings this <u>pro se</u> action to recover 50 percent of the gross profits of a global securities trading and initial public offering ("IPO") flipping venture that she claims she entered into with Robert Jacobus Pierot, Sr.  Flipping consists of acquiring securities in IPOs and then selling those securities in the immediate aftermarket for a profit.

       Gaind asserts a fraud claim and a fraudulent conveyance claim against defendants Angel Garcia Cordero, who worked with Pierot as a trader, and Anta Inversiones y Asesoramiento, S.A. ("Anta"), a company controlled by Cordero.

       Defendants move for summary judgment dismissing both claims.  The motion is granted.

### BACKGROUND

       The following facts are undisputed except where otherwise indicated.

In August 1993, Gaind began working with Pierot in his global securities and IPO flipping business.

In her Second Amended Complaint, Gaind alleges that she entered into a joint venture with Pierot in 1994 and that she was entitled to 50 percent of the gross trading profits from Pierot's worldwide securities trading and IPO flipping business.  Gaind further alleges that Cordero, a former trader for Pierot, and Cordero's company, Anta, were deeply involved with this joint venture.  She claims that Cordero bought and sold securities on behalf of the joint venture through Anta and other entities.  Pierot died on November 14, 1997, and Gaind alleges that, by this time, Pierot had not paid her the share of the joint venture's profits that was owed to her.

In her fraud claim, Gaind asserts that Cordero falsely represented to her in 1997 and 1998 that a business reorganization of the joint venture was taking place when, in actuality, he was stealing assets that rightfully belonged to her.  In her fraudulent conveyance claim, Gaind alleges that Cordero, Anta, and the Pierot children moved or helped move assets from the joint venture that were part of Pierot's estate offshore to deprive her of those assets.

Prior Proceedings

On September 24, 1999, Gaind commenced an action against the estate of Pierot, several of Pierot's children, as well as Cordero and Anta. The latter two defendants apparently were not served.  At this time,

Gaind was represented by an attorney.  The Pierot children filed a motion to dismiss the complaint.  Gaind failed to respond, and the court dismissed the action as to the Pierot children in an order dated March 30, 2001.  Gaind did not appeal.

On November 30, 2004, Gaind commenced the present action pro se.  The complaint named the same defendants and contained the same factual allegations as her 1999 complaint.  In response to a motion to dismiss, the court ruled that Gaind's claims against all defendants except Cordero and Anta were barred by the doctrine of res judicata. Gaind v. Pierot, No. 04 Civ. 9407, 2006 WL 846268, at *3-4 (S.D.N.Y. Mar. 31, 2006).  The court also dismissed Gaind's breach of fiduciary duty, waste, and conversion claims against Cordero and Anta for failure to comply with New York's three-year statute of limitations.  Id. at *6-7. Further, it dismissed her quantum meruit, unjust enrichment, and equitable estoppel claims against Cordero and Anta due to other defects. Id. at *8.  The court ordered judgment to be entered in favor of all defendants except with regard to Gaind's fraud and fraudulent conveyance claims against Cordero and Anta.  Id.  The Second Circuit affirmed.  Gaind v. Pierot, 282 Fed. Appx. 946, 947 (2d Cir. 2008).

On November 22, 2006, Gaind filed an Amended Complaint against Cordero and Anta in the 2004 action.  On April 9, 2010, Gaind filed a Second Amended Complaint.  Her Second Amended Complaint

contains the fraud and fraudulent conveyance claims that are presently before the court.

## DISCUSSION

The Alleged 1994 Agreement

The validity of Gaind's claims of fraud and fraudulent conveyance against Cordero and Anta depend entirely on whether there was the agreement with Pierot in 1994.  In other words, her claim of fraud is that Cordero misrepresented what he was doing with assets to which she was entitled under the alleged agreement.  The fraudulent conveyance claim is a claim that Cordero and Anta participated in the fraudulent removal of assets belonging to her by virtue of the 1994 agreement.

In their motion for summary judgment, defendants Cordero and Anta raise the basic question about whether there was in fact a 1994 agreement as alleged by Gaind.  They contend that there is no proof of such an agreement sufficient to raise a triable issue.

Gaind's contract claim is solely that there was a written contract between her and Pierot dated January 20, 1994.  She does not contend that there was merely an oral contract, nor does she propose to testify about such an oral contract.

Before discussing the January 20, 1994 document, it is appropriate to note that there apparently was a letter agreement of September 1, 1993 between Pierot and Gaind.  This 1993 agreement has been presented to the court by defendants.  It provides that Gaind will

perform IPO flipping and will be paid 50 percent of the net monthly profits of the flipping carried out by Gaind.  Cordero, and perhaps other people, were also performing these flipping operations for Pierot.  But Cordero and the others, if there were such, were being compensated for their own trading activity.  The September 1, 1993 document treated Gaind in this fashion, in that she would be compensated for her own trading activity.

As will be described, the alleged January 20, 1994 agreement purported to go beyond the September 1, 1993 agreement, in recognizing that Gaind was performing administrative and other functions in relation to Pierot's overall business, entitling her to a share of the profit in this overall business.

Paragraph 23 of the Second Amended Complaint expresses Gaind's basic claim about a January 20, 1994 agreement:

> On January 20, 1994, following extensive discussions since 1993 of formalizing the operation of their business, Pierot Sr. and Plaintiff entered into a written agreement (the "1994 Agreement"), which was Exhibit A in the Complaint dated November 30, 2004, and which is incorporated herein by reference.

The alleged 1994 agreement was attached as Exhibit A to the original complaint dated November 30, 2004.

This document purports to be on the letterhead of Robert J. Pierot. It bears the date of January 20, 1994.  It is addressed to Meenu Gaind, and starts by stating, "This agreement will confirm our various conversations."  This is followed by 21 detailed paragraphs.  Paragraph 9

states that the gross profits of the global securities trading and IPO flipping operation will be split "50/50 between both of us," referring to Pierot and Gaind.  At the end of the document there is a signature line for Gaind and a signature line for Pierot.  The document shows Gaind's signature.  It also shows a signature, purporting to be that of Pierot.  Underneath is what is said to be the signature of a Florida notary public by the name of C. Bumgarner.  Beneath her name is a stamp stating:

> "NOTARY PUBLIC.  STATE OF FLORIDA.  MY COMMISSION EXPIRES JULY 24, 1994.  BONDED THRU NOTARY PUBLIC UNDERWRITERS."

What is relied on by Gaind in this litigation is not an original of the document but what is said to be a photocopy of the original.  There is no original of the January 20, 1994 document in the record in this case, and no one asserts that an original will be offered into evidence if the case goes to trial.

Gaind attempts to explain the absence of the original by claiming that she produced that original in the prior litigation against Pierot's children.  However, an attorney from the law firm that represented Pierot's children in the 1999 action, as well as the 2004 action, has submitted an affidavit stating that Gaind did not produce or otherwise informally provide the original of the January 20, 1994 document in connection with the litigation and that law firm's files have been searched but do not contain such an original.  It should be added that there was no discovery in the 1999 action prior to the time that the

defendants' dismissal motion was made, and that motion was granted. Thus, there was no discovery in the 1999 action.

There is a serious question about the authenticity of the alleged photocopy of the purported January 20, 1994 agreement, and there is also a serious question about whether there was an original of this agreement. The writing purporting to be Pierot's signature is reproduced quite incompletely in the alleged photocopy. Moreover, the Florida notary public, whose alleged notarization appears on the document beneath Pierot's signature, has been deposed, and she has testified that she is "one hundred percent certain" that she did not notarize this document. She has given lengthy testimony describing what she says she invariably writes onto a document when she notarizes a signature, and she has testified to Florida state law as imposing these requirements. Most of what is required does not appear in her alleged notarization. Her testimony is that she is absolutely certain that she did not notarize this document and has no idea how her signature and partial notary stamp came to be included on the document.

In order to support her claim of the validity of the January 20, 1994 document, Gaind relies on a transcript of a tape-recorded telephone conversation that Gaind had with Pierot during the summer of 1993. In this conversation, Pierot expressed to Gaind his confidence that she was an important factor in his investment business. Pierot and Gaind discussed the fact that she would have her own trading activities

and be compensated for these.  But beyond this, there was a discussion of Gaind's administrative role in Pierot's overall business and operations involving all traders, the concept being that she should have additional compensation for this role.  There were discussions clearly directed toward arriving at a contract about this role of Gaind in Pierot's business.  Drafts were being exchanged.  There was discussion of specific subjects and specific language in connection with the contract, which was being negotiated and drafted.  A number of items discussed ended up, in one form or another, in the January 20, 1994 document which is now before the court.  Gaind plausibly argues that this conversation was part of the negotiations which led to what she contends was the January 20, 1994 agreement.

Another document must now be mentioned, on which Gaind strongly relies in the current litigation.  It purports to be a letter dated February 5, 1997 from Pierot to Gaind, expressing gratitude to Gaind for her being a partner in an "investment business."  Among other things, the document purports to reflect Pierot's view that Gaind was owed in excess of $20 million.  The document refers to "existing agreements," including the agreement of January 20, 1994.  Gaind plausibly argues that this was a letter designed to confirm Pierot's obligations to her under the January 20, 1994 Agreement.

Again, an issue is raised about the authenticity of the February 5, 1997 document.  Again, Gaind does not have the original, but only a

purported photocopy.  And again, Gaind states that she produced the
original in the prior litigation, something which appears not to be the
case.

Defendants contend that the January 20, 1994 document is
inadmissible as evidence by virtue of certain Federal Rules of Evidence.
Since plaintiff relies entirely on this document as constituting the
January 20, 1994 agreement, defendants contend that her case falls
because there is no contract document constituting valid evidence.

The court takes a different approach.  The January 20, 1994
document is not merely a piece of evidence.  Whether there was or was
not such a contract goes to the basic merits of Gaind's case.  Thus, it is
appropriate to envision what would occur at a trial on the merits
regarding the issue of whether there was a contract between Pierot and
Gaind to share profits of the overall venture.

Gaind would surely be entitled to testify about her business
relationship with Pierot and about negotiations and drafts intended to
lead to a contract giving Gaind 50 percent of the profits of the business.
Gaind presumably would be entitled to offer into evidence the recorded
telephone conversation of the summer of 1993.  The court will assume
for purposes of this motion, that the recording, reflecting negotiations of
a contract, would not be barred by the hearsay rule.  Gaind could testify
that, after negotiations with Pierot, in the recorded conversation and
perhaps later, she and Pierot arrived at the terms of a final written

agreement.  Presumably she would testify that the January 20, 1994 document is a copy of that final written agreement and would offer that document into evidence.  Defendants would object on the grounds that Gaind is not producing the original contract, nor is she producing an authentic copy of such original contract, citing Federal Rules of Evidence 1002 <u>et</u> <u>seq</u>.

As already indicated, it is the view of the court that the issue of the validity of the January 20, 1994 document is not a mere issue under the rules of evidence but is an issue going to the merits of Gaind's case.  It is the further view of the court that the January 20, 1994 document would properly be admitted at the trial of this action, and questions about its validity and authenticity should be submitted to the jury as going to the merits of her contract claim.

However, there are, and would be at trial, questions of the most serious nature about the validity and authenticity of the January 20, 1994 document, as to whether it reflects or constitutes an actual contract.  A major problem, to say the least, is Gaind's failure to have the original of the document, when normally she would be expected to have such original.  Moreover, her explanation of the reason for not having the original is not believable.  Further, it is surely relevant that Federal Rule of Evidence 1002 requires the use of an original document, with certain exceptions.  It is well established that copies can often be used if they are

authentic, which they usually are.  But here the nature of the photocopy is far different from what it is in the usual case.

There is the problem about the alleged notarization.  Defendants would have the right to introduce into evidence the deposition of the Florida notary whose name appears beneath the alleged signature of Pierot.  The notary has testified in her deposition at considerable length as to why what appears on the January 20, 1994 document was not and could not have been her notarization.  The testimony must be regarded as conclusive on the point.

If the notarization is not genuine, how can it be said that the signature of Pierot is genuine?  And if the signature of Pierot is not genuine, it is impossible to say that there was any contract dated January 20, 1994 signed by Pierot.

In the view of the court, there is no way whatever by which a jury could find, even by a preponderance of the evidence, that the January 20, 1994 document is an authentic copy of an actual contract.

The court also finds that there is no meaningful substantiation in the February 5, 1997 document.  Again, it purports to be a copy, but no satisfactory explanation is given as to why the original is not available. Its authenticity is at least doubtful, and cannot make up for the defects described above that exist in the case of the January 20, 1994 document.

The court is mindful of the fact that there apparently were negotiations and drafting of a possible contract of the kind reflected in the January 20, 1994 document.  But the fact of such negotiations and drafting does not mean that a contract was actually entered into. Gaind's case depends on proving such a contract.  In the view of the court, there are conclusive reasons why she would not be able to prove to the trier of fact that the document she relies on is a copy of an actual contract.

Defendants are entitled to summary judgment against her claim that there was a contract entered into dated January 20, 1994 giving her a share of the profits in a venture with Pierot.

Fraud and Fraudulent Conveyance Claims

In her fraud claim, Gaind asserts that Cordero falsely represented to her in 1997 and 1998 that a business reorganization of the joint venture was taking place when, in actuality, he was stealing assets that rightfully belonged to her.  In her fraudulent conveyance claim, Gaind alleges that Cordero, Anta, and the Pierot children moved or helped move assets from the joint venture that were part of Pierot's estate offshore to deprive her of those assets.

As indicated earlier, there can be no validity to these claims unless Gaind was actually owed money under a contract with Pierot so that his estate or heirs would owe her money after his death.  But the court has granted summary judgment against Gaind on her contract claim.  This

means there is simply no basis for the fraud and fraudulent conveyance claims.

Gaind has put on the record the transcripts of two telephone conversations she had with Cordero in late 1998 and early 1999, which she recorded. The court notes that these conversations contain no admissions by Cordero or any other evidence supporting a claim against Cordero or Anta for fraud or misappropriation of assets belonging to Gaind.

### CONCLUSION

For the foregoing reasons, the court grants defendants' motion for summary judgment dismissing Gaind's action.

This opinion resolves document number 108 listed on the docket.

SO ORDERED.

Dated:  New York, New York
        August, 25 2011

Thomas P. Griesa
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8 / 25 / 11_

- 13 -